**McCARTER & ENGLISH, LLP**
Lanny S. Kurzweil, Esq.
Alison Morrissey, Esq.
Amanda Dumville, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Telephone: (973) 639-2044
Facsimile: (973) 297-3810
lkurzweil@mccarter.com
amorrissey@mccarter.com
adumville@mccarter.com
*Attorneys for E.I. du Pont de Nemours
and Company, The Chemours Company, and
The Chemours Company FC, LLC*

**BALLARD SPAHR**
Glenn A. Harris
David A. Haworth
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
harrisg@ballardspahr.com
haworthd@ballardspahr.com
*Attorneys for E.I. du Pont de Nemours
and Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT SPECIALTY PRODUCTS USA, LLC; THE 3M COMPANY; AND "ABC CORPORATIONS" 1-10 (NAMES FICTITIOUS), <br><br> Defendants. | Case No. <br><br> **NOTICE OF REMOVAL ON BEHALF OF E.I. DU PONT DE NEMOURS AND COMPANY** |

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Defendant, E.I. du Pont de Nemours and Company ("DuPont") hereby removes the above-captioned case pursuant to 28 U.S.C. §1442 from the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey. The grounds for removal are as follows:

## I.   BACKGROUND

1.   This suit involves claims against DuPont for acts that were taken under the express authority and control of agencies and officers of the United States. It is thus removable under 28 U.S.C. § 1442(a)(1).

2.   On March 27, 2019, Plaintiffs, the New Jersey Department of Environmental Protection, the Commissioner of the Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund (collectively "Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County in a case captioned as <u>New Jersey Department of Environmental Protection, et. al. v. E.I. du Pont de Nemours and Company, et. al.</u>, Case No. MID-L-002448-19.

3.   On May 31, 2019, Plaintiffs filed a First Amended Complaint against Defendants DuPont, The Chemours Company, The Chemours Company FC, LLC, DuPont Specialty Products USA, LLC, The 3M Company, and "ABC Corporations" 1-10 (names fictitious). *See* a true and correct copy of the First Amended Complaint attached hereto as Exhibit "A."

4.   Plaintiffs served DuPont with the First Amended Complaint on June 10, 2019. DuPont was not served with the original Complaint at an earlier time.

5.   In the First Amended Complaint, Plaintiffs claim, *inter alia*, that since 1904, DuPont has engaged in the manufacturing, storing, and transport of a <u>wide variety</u> of products at

the Parlin Site, and have generated a diverse and significant amount of hazardous waste throughout its operation, including, but not limited to per- and polyfluoroalkyl substances ("PFAS")), various volatile organic compounds ("VOCs"), polycyclic aromatic hydrocarbons ("PAHs"), polychlorinated biphenyls ("PCBs"), and metals. (Emphasis added.) Exhibit "A," at 3, ¶ 3.

6. The First Amended Complaint alleges that the Parlin Site was comprised of 350 acres of real property located at 250 Cheesequake Road, Parlin, Old Bridge Township, Sayreville Borough, Middlesex County ("Parlin" or the "Site"). Plaintiffs indicate that in December 2008, DuPont donated approximately 120 acres located along the eastern portion of the site to the Borough of Sayreville. Id. at 15 – 16, ¶ 56.

7. Plaintiffs aver that in 1904, DuPont purchased the Parlin Site from a gun cotton manufacturing company, and continued the manufacture of gun cotton until 1939. Id. at 16, ¶ 60.

8. Additionally, Plaintiffs state that gun cotton is a nitrocellulose-based product used as a propellant or a low-order explosive. Id.

9. Plaintiffs' First Amended Complaint contends that hazardous substances and pollutants, discharged from the Parlin site have reached and adversely impacted the air, groundwater, surface waters, sediments and soil, forests, and biota both off and on site. Id. at 11-15, ¶¶ 31, 37, 39, 44, 48, and 55.

10. Throughout the World War I and World War II period, DuPont entered into numerous contracts with the United States for the manufacturing of chemical compounds to be produced at Parlin and to be used by the United States and its Allies to support the war effort.

11. These government contracts, as described below, compelled DuPont to vastly increase the volume of chemical compounds manufactured at Parlin. The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes. Plaintiffs now claim that these discharges must be remediated by DuPont and the other Defendants, and they also request natural resource damages stemming from these emissions.

12. In 1918, pursuant to War Order P6515-813E, DuPont manufactured water dried army powder samples for the Picatinny Arsenal.

13. During this time period, DuPont was conducting chemical and stability tests of nitrocellulose at Parlin – including, but not limited to nitrocellulose stabilized with different concentrations of diphenylamine. These samples were manufactured consistent with War Department specifications.

14. On March 12, 1942, DuPont and the United States entered into Contract No. W-672-ORD-5632 for the exchange of smokeless powder from the Picatinny Arsenal for nitrocellulose manufactured at Parlin. The nitrocellulose was to conform to United States Army specifications.

15. In June 1943, DuPont entered into a War Supply Contract for the production of insect repellant at its Parlin plant.

16. As further explained below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiffs bring claims for or relating to actions that occurred while DuPont was acting under a federal officer or agency.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1442(a).

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1442(a) because this is a suit against a "person acting under [an] officer[] of the United States or of any agency thereof . . . for or relating to an[] act under color of such office."

18. "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016).

19. The case is removable pursuant to Section 1442(a) because "(1) [DuPont] is a 'person' within the meaning of the statute; (2) the plaintiffs' claims are based upon [DuPont's] conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiffs' claims against [DuPont] are 'for, or relating to' an act under color of federal office; and (4) [DuPont] raises a colorable federal defense to the plaintiff's claims." Papp, 842 F.3d at 812 (brackets omitted).

### A. DuPont is a "Person" Under 28 U.S.C. § 1442(a)

20. DuPont is a corporate entity, and corporations are "person[s]" pursuant to Section 1442(a)(1). Papp, 842 F.3d at 812 (for purposes of Section 1442(a), "a corporation[] is in legal fact a person" (citing 1 U.S.C. § 1)).

### B. Plaintiffs' Claims Are Based on DuPont's Conduct While "Acting Under" the United States

21. The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012)(*quoting* Watson v. Philip Morris Cos., Inc., 551 U.S. 142 (2007)); *see also* Defender Ass'n, 790 F.3d 457, 468 (2015).

5

22. Although the Supreme Court has not precisely determined "whether and when particular circumstances may enable private contractors to invoke the statute," it has noted with approval that "lower courts have held that Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." Watson at 153-154.

23. The classic case of government assistance as it relates to government contractors is when "the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'" Defender Ass'n, 790 F.3d at 468 (quoting Watson, 551 U.S. at 153, 127 S.Ct. 2301). When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," that contractor is "acting under" the authority of a federal officer. Ruppel, 701 F.3d at 1181; *see also* Defender Ass'n, 790 F.3d at 468–70.

24. Here, DuPont was acting under the United States government when it performed pursuant to government contracts including but not limited to, War Order P6515-813E and W-672-ORD-5632 ("Parlin Agreements") to produce chemicals including but not limited to nitrocellulose and insect repellent ("Chemical Compounds") to make ammunition and other products required by the government for the war effort.

25. DuPont was acting under the supervision of the United States government at Parlin as the Parlin Agreements contain provisions which dictate the government specifications that DuPont was required to follow in manufacturing each chemical compound.

26. Moreover, DuPont's contractual relationship with the government fits the classic government assistance scenario as the Parlin Agreements required DuPont to work for the

ME1 30841150v.2

government by producing Chemical Compounds that the government needed to advance the war effort.

27. Thus, DuPont was acting under government supervision at Parlin in manufacturing the Chemical Compounds as DuPont's production was done pursuant to government specifications, and DuPont was producing the Chemical Compounds to assist the government with products that the United States government needed during times of war.

### C. Plaintiffs' Claims against DuPont Are "For, or Relating To" Acts under Color of Federal Office

28. The next requirement, often referred to as the "nexus" or "causation" requirement, demands that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." Defender Ass'n, 790 F.3d at 471.

29. In the matter at bar, Plaintiffs allege that since 1904, DuPont has discharged hazardous substances and pollutants from the Parlin site which have reached and adversely impacted the air, groundwater, surface waters, sediments and soil, forests, and biota both on and off the Site. Exhibit "A," at 11 – 15, ¶¶ 31, 37, 39, 44, 48, and 55.

30. As demonstrated by the Parlin Agreements, in the 1900s, DuPont was producing and utilizing hazardous substances at Parlin as ordered by the United States government.

31. Therefore, the "for or relating to" prong is satisfied because the production of hazardous substances ordered by the government at Parlin makes up a significant portion of Plaintiffs' alleged harm.

ME1 30841150v.2

### D. DuPont Has A Colorable Federal Defense to Plaintiffs' Claims

32. "At the removal stage," DuPont need "only show" that a federal defense is "legitimate and could reasonably be asserted, given the facts presented and the current law." Papp, 842 F.3d at 815 (brackets omitted).

33. DuPont is immune from Plaintiffs' state tort claims[1] based on the government contractor defense as articulated in Boyle v. United Technologies Corp., 487 U.S. 500 (1988) which stated that the "uniquely federal interest" of "getting the Government's work done" requires that under certain circumstances, a private contractor must be protected from tort liability associated with its performance of a government procurement contract. Id. at 504–05. The Boyle Court held that federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512.

34. Given Plaintiffs' allegations, namely, that DuPont is liable in tort due to its production, utilization and discharge of hazardous materials at Parlin since 1904, and considering the Parlin Agreements requiring DuPont to produce hazardous materials in the relevant timeframe, it is reasonable for DuPont to assert the government contractor defense articulated in Boyle, *supra*. *See* New Jersey D.E.P. v. Exxon Mobil Corp., 381 F.Supp.2d 398, 404 (2008) (finding that Defendant's government contractor defense was colorable where certain of its production activities during World War II were under the control of the federal government).

---

[1] Plaintiffs' Complaint alleges the following state tort claims against DuPont: Public Nuisance, Trespass, Negligence, and Abnormally Dangerous Activity. Exhibit "A" at 257 – 94, ¶¶ 257 – 290.

8

### III. DUPONT SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

35. DuPont files this Notice of Removal "together with a copy of all process, pleadings, and orders served upon such defendant or defendants" during the state-court proceedings as Exhibit "B." *See* 28 U.S.C. § 1446(a).

36. This Court is the United States District Court for the district and division embracing the place where the state court complaint was filed. As such, it is the appropriate venue for removal. *See* 28 U.S.C. § 1446(a).

37. This Notice of Removal is timely as a named defendant's time to remove is triggered by [the] simultaneous service of the summons and complaint … not by mere receipt of the complaint unattended by any formal service. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 S.Ct. 1322, 1324 (1999).

38. On June 10, 2019, Plaintiffs served DuPont with a Summons and First Amended Complaint.

39. Thus, this Notice of Removal has been filed timely as, consistent with 28 U.S.C. § 1446(b), it has been "filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."

40. No previous application has been made for the relief requested herein.

41. Pursuant to 28 U.S.C. § 1446(d), DuPont will promptly serve written notice of this Notice of Removal upon counsel for Plaintiffs and file a copy of this Notice of Removal with the Clerk of the New Jersey Superior Court.

42. If there are any questions concerning this removal, DuPont respectfully requests the opportunity to present briefing and oral argument in support of removal.

ME1 30841150v.2

/s/ Lanny S. Kurzweil  
Lanny Kurzweil  
Alison Morrissey  
Amanda Dumville  
McCARTER & ENGLISH, LLP  
Four Gateway Center  
100 Mulberry St.  
Newark, NJ 07102  
Telephone: (973) 639-2044  
Facsimile: (973) 297-3810  
lkurzweil@mccarter.com  
amorrissey@mccarter.com  
adumville@mccarter.com  
*Attorneys for E.I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC*

Glenn A. Harris  
David A. Haworth  
Ballard Spahr  
210 Lake Drive East, Suite 200  
Cherry Hill, NJ 08002-1163  
harrisg@ballardspahr.com  
haworthd@ballardspahr.com  
*Attorneys for E.I. du Pont de Nemours and Company*

Dated: July 5, 2019

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2019, I caused true and correct copies of the Notice of Removal and exhibits, Civil Cover Sheet, the Notice to the Clerk of the Superior Court of the Filing of the Notice of Removal, Rule 7.1 Corporate Disclosure Statements, and Statement of Filing and Service of Removal to be served via electronic delivery and United States Postal Service Priority Mail upon the following counsel:

**As to Plaintiffs**:

Gwen Farley
**STATE OF NEW JERSEY**
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street; PO Box 093
Trenton, New Jersey 08625-0093
Gwen.farley@law.njoag.gov

Leonard Z. Kaufmann
Joseph A. Maurice
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
lkz@njlawfirm.com
jam@njlawfirm.com

William J. Jackson
John Gilmour
**KELLEY DRYE & WARREN LLP**
515 Post Oak Blvd. Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
jgilmour@kelleydrye.com

John K. Dema
Scott E. Kauff
**LAW OFFICES OF JOHN K. DEMA, P.C.**
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
jdema@demalaw.com
skauff@demalaw.com

**As to The 3M Company**:

>Donald J. Camerson, II
>**BRESSLER AMERY & ROSS**
>325 Columbia Turnpike
>Suite 301
>Florham Park, NJ  07932
>djcamerson@bressler.com
>
>Richard F. Bulger
>**MAYER BROWN LLP**
>71 South Wacker Drive
>Chicago, IL  60606
>rbulger@mayerbrown.com

/s/ *Lanny Kurzweil*
Lanny Kurzweil
