**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY, et al., <br><br> Defendants. | Civil Action No. 19-14767 (MAS) (ZNQ) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund's (collectively, "the State") Motion to Remand This Action to the Superior Court of New Jersey. (ECF No. 42.) Defendant E.I. du Pont de Nemours and Company ("DuPont" or "Defendant") opposed (ECF No. 45), and the State replied (ECF No. 48). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, the State's Motion to Remand is denied.

**I.   BACKGROUND**

The State initiated this action in New Jersey Superior Court against DuPont and others. (Compl. ¶¶ 1, 3, 5, Ex. A to Notice of Removal, ECF No. 1-1.) The State alleges that DuPont violated state common law and environmental statutes by discharging hazardous substances and

pollutants into New Jersey's natural resources in and around 250 Cheesequake Road in Parlin, New Jersey (the "Parlin Site"). DuPont timely removed the action to this Court asserting federal jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), alleging it is entitled to government contractor immunity under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). (Notice of Removal ¶¶ 1, 23, 33, ECF No. 1.) The State presently moves to remand, arguing that "DuPont has failed to meet its burden of establishing subject matter jurisdiction." (State's Moving Br. 7, ECF No. 42-2.)

### A. **Factual Allegations in Complaint**

In 1904, DuPont purchased the Parlin Site from a gun cotton manufacturer and subsequently continued to manufacture gun cotton until 1939. (Compl. ¶ 60.) Since then, DuPont has engaged in the manufacture, storage, and transport of a wide variety of products at the Parlin Site. (*Id.* ¶¶ 1, 3.) The State alleges that, as a result of DuPont's operations, it has generated and released a diverse and significant amount of hazardous waste, injuring the natural resources at and nearby the Parlin Site. (*Id.* ¶¶ 3, 5.)

### B. **Factual Allegations in Notice of Removal**

During the time of the first and second World Wars, DuPont manufactured nitrocellulose, gun powder, and insect repellant at the Parlin Site under the supervision of and pursuant to contracts (the "Parlin Contracts") with the Federal Government. (Notice of Removal ¶¶ 10–15, 24–27.) DuPont alleges that the Parlin Contracts contained specifications as to the manufacture of nitrocellulose, (*id.* ¶¶ 13, 14, 25), and compelled DuPont to vastly increase the volume of certain chemical compounds manufactured at the Parlin Site, (*id.* ¶ 11). "The manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes." (*Id.* ¶ 11.)

## II. LEGAL STANDARDS

The federal officer removal statute "permits a defendant to remove a case to federal court ... provided the allegedly culpable behavior took place while the defendant was 'acting under' the direction of a federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810 (3d Cir. 2016) (citing 28 U.S.C. § 1442(a)(1)). Section 1442 is an exception to the well-pleaded complaint rule. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). That is, "suits ... may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Id.*

The purpose of § 1442(a)(1) is to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Indeed, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* The federal officer removal statute is, therefore, "broadly construed" in favor of a federal forum. *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila. (Defender Ass'n)*, 790 F.3d 457, 466–67 (3d Cir. 2015).

"A defendant ... desiring to remove any civil action from a State court shall file in the district court ... a notice of removal ... containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Where a plaintiff facially attacks jurisdiction, the allegations in the notice of removal are taken as true. *Papp*, 842 F.3d at 811 (citation omitted).

## III. DISCUSSION

To remove under § 1442(a), (1) the defendant must be a "person" within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant's conduct while "acting

3

under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant must be "for, or relating to" an act under color of federal office; and (4) the defendant must raise a colorable federal defense to the plaintiff's claims. *Id.* at 812. The Court discusses each requirement in turn.

### A. DuPont is a "person" within the meaning of the statute.

Because the federal officer removal statute does not define "person," the Court looks to § 1 of Title 1 of the United States Code, which defines "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." Under this definition, DuPont, a corporation (Notice of Removal ¶ 20), is a person.

### B. DuPont was "acting under" a federal officer or agency.

The "acting under" requirement is "liberally construed to cover actions that involve an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Papp*, 842 F.3d at 812 (internal quotation marks and citation omitted). When "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete, that contractor is 'acting under' the authority of a federal officer." *Id.* (citation omitted).

DuPont alleges that, pursuant to the Parlin Contracts, DuPont produced chemicals for the Federal Government in aid of United States war efforts. (Notice of Removal ¶ 24.) This is the classic case of a private contractor "helping the Government to produce an item that it need[ed]." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153–54 (2007) (noting that the contractor in *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 287 (5th Cir. 1998) acted under the authority of a federal officer when it fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war). DuPont, therefore, has demonstrated that it was "acting under" a federal officer or agency.

### C. The Complaint rests on acts done "for or relating to" a federal officer or agency.

Next, the Court considers whether DuPont's alleged conduct was undertaken "for or relating to" a federal office. The State argues that DuPont's discharge of hazardous waste is not an act under color of federal office because there is not a "*direct* connection or association between the unlawful act and the federal government's control *over that act*." (State's Moving Br. 24 (citing *Papp*, 842 F.3d at 813) (emphasis in original).)

Prior to 2011, removing defendants were required to show that "the acts for which they were being sued occurred at least in part *because of* what they were asked to do by the Government." *Defender Ass'n*, 790 F.3d at 471 (internal quotation marks and citation omitted). In 2011, the federal officer removal statute was amended to encompass suits "for *or relating to* any act under color of [federal] office." *Id.* (citation omitted). Following this amendment, the Third Circuit "ha[s] taken a more permissive view of [the 'for or relating to'] requirement" finding it "sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *Papp*, 842 F.3d at 813.

DuPont alleges that its manufacture of certain hazardous chemicals, as contracted by the Federal Government, resulted in the alleged damages that form the basis for the State's claims. (*See* Notice of Removal ¶¶ 29–30.) Taking a more permissive view of this requirement, the Court finds DuPont's allegations show the acts for which it is being sued share a connection to acts under color of federal office. DuPont, accordingly, satisfies this requirement.

### D. DuPont raises a colorable federal defense.

At the removal stage, a defendant need only show that its defense is "colorable," "which is to say that the defense was legitimate and [could] reasonably be asserted, given the facts presented

5

and the current law." *Papp*, 842 F.3d at 815 (citing Colorable Claim, Black's Law Dictionary (10th ed.)).

> In construing the colorable federal defense requirement, [the Supreme Court] ha[s] rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." [The Court] do[es] not require [a removing defendant] virtually "win his case before he can have it removed."

*Acker*, 527 U.S. at 431 (internal citations omitted) (finding the defendants had presented a colorable federal defense, although ultimately rejecting the defense as a matter of law).

The parties heavily dispute this requirement. As a preliminary matter, the State challenges DuPont's late assertion of a colorable defense under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940) in its Opposition Brief. The Court, accordingly, addresses first whether DuPont is precluded from arguing a colorable *Yearsley* defense. Finding that DuPont is not precluded from arguing a *Yearsley* defense, the Court then considers whether DuPont has advanced a colorable federal defense.

### 1. DuPont is not precluded from arguing a colorable federal defense under *Yearsley*.

In its Notice of Removal, DuPont alleges that it is immune under a "government contractor theory" as articulated in *Boyle*. (Notice of Removal ¶ 33.) In its response to the State's Motion, however, DuPont pivots to further argue that it has a colorable defense under *Yearsley*. (Def.'s Opp'n Br. 10–14, ECF No. 45.) The State argues that DuPont may not assert a new defense under *Yearsley* and that DuPont "must be held to the facts and defenses averred in [its] Notice of Removal." (State's Reply Br. 3, ECF No. 48.)

"[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v.*

*Gomez*, 136 S. Ct. 663, 673 (2016), *as revised* (Feb. 9, 2016). Federal courts have generally recognized the "government contractor defense" under *Boyle* and "derivative sovereign immunity" under *Yearsley*. *See, e.g.*, *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (assessing whether under § 1442(a) the defendant raised a colorable government contractor defense or derivative sovereign immunity); *Smith v. Int'l SOS Assistance Inc.*, No. 11-3125, 2013 WL 6474150, at *2 (E.D. Pa. Dec. 6, 2013) (differentiating in dicta the government contractor and derivative sovereign immunity defenses).

"This[, however,] has become a complex area of law. Specifically, it is unclear whether a 'derivative sovereign immunity defense'. . . derived from *Yearsley* is truly distinct from a 'government contractor defense' derived from *Boyle*." *Cabalce v. VSE Corp.*, 922 F. Supp. 2d 1113, 1123 (D. Haw. 2013), *aff'd sub nom.*, *Cabalce*, 797 F.3d 720. Consequently, *Yearsley* immunity is not necessarily a new defense raised by the facts alleged in DuPont's Notice of Removal. Because the Court rejects a narrow, grudging interpretation of the statute and of the colorable defense requirement, and because the factual allegations underlying both defenses overlap significantly, the Court considers whether DuPont has raised a colorable defense under either *Boyle* or *Yearsley*.

### 2. DuPont raises a colorable defense under *Yearsley*.

"The notion of shielding contractors from liability for defective government specifications . . . dates at least as far back as *Yearsley*, which held that a contractor . . . was not liable . . . if the contractor's performance adhered to the government's specifications." *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1215 n.4 (3d Cir. 1989). Under *Yearsley*, "[w]here the [Federal] Government's 'authority to carry out [a] project was validly conferred, that is, if what was done was within the constitutional power of Congress,' . . .

7

'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald*, 136 S. Ct. at 673 (quoting *Yearsley*, 309 U.S. at 20–21). "[T]he primary purpose of the defense is to prevent the contractor from being held liable when the government is actually at fault but is otherwise immune from liability." *World Trade Ctr.*, 456 F. Supp. 2d at 562 (internal quotation marks and citations omitted).

In its Notice of Removal, DuPont alleges that it produced gun cotton, nitrocellulose, cannon powder, and insect repellant pursuant to the Parlin Contracts, which stemmed from the Federal Government's war efforts. (Notice of Removal ¶¶ 10–16.) DuPont alleges that production of nitrocellulose was consistent with War Department and United States Army specifications. (*Id.* ¶ 13 ("These [nitrocellulose] samples were manufactured consistent with War Department specifications."); *id.* ¶ 14 ("The nitrocellulose was to conform to United States Army specifications.").) DuPont further alleges that "[it] was acting under the supervision of the United States [G]overnment at [the] Parlin [Site] as the Parlin [Contracts] contain[ed] provisions which dictate[d] the [G]overnment specifications that DuPont was required to follow in manufacturing each chemical compound." (*Id.* ¶ 25; *see also id.* ¶ 27.) Moreover, "the manufacture of these chemical compounds necessarily resulted in air and water discharges inherently associated with DuPont's manufacturing processes." (*Id.* ¶ 11.)

Taking the facts in DuPont's Notice of Removal as true, the Court finds that DuPont alleges a colorable defense under *Yearsley*. DuPont alleges that the Federal Government provided DuPont with chemical manufacturing specifications that DuPont was required to follow, and that DuPont performed the Parlin Contracts under the supervision of the Federal Government. There is no allegation that DuPont "exceeded [its] authority" or the authority "was not validly conferred," where DuPont "could be held liable for conduct causing injury to another." *Campbell-Ewald*, 136

S. Ct. at 673 (quoting *Yearsley*, 309 U.S. at 21) (internal quotation marks omitted); *see generally* Pl.'s Reply Br.[1]) Here, mindful that DuPont need not win its case before it removes the case, the Court concludes that DuPont has raised a colorable federal defense under *Yearsley*.[2]

## IV.   CONCLUSION

Because DuPont meets the four requirements for removal under § 1442, the State's Motion to Remand This Action to the Superior Court of New Jersey is denied. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[1] The State only argues that the Federal Government had not provided Dupont with *waste disposal* specifications and that, "with no waste disposal specifications from the [Federal G]overnment to follow, DuPont could not have been simply acting as directed by the government in discharging hazardous substances and pollutants into the State's natural resources." (State's Reply Br. 4.) The State provides no support to apply *Yearsley* so limitedly. In *Yearsley*, the Federal Government did not direct the contractor to take the petitioners' land; rather, the Government directed the contractor to build dikes in the Missouri River, which resulted in erosion and part of the petitioners' land being washed away. 309 U.S. at 19–20.

[2] Because the Court finds that DuPont has stated a colorable federal defense under *Yearsley*, the Court does not consider whether DuPont has asserted a colorable defense under *Boyle*.

9