**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY; et al.,<br><br>　　　　　　　　Defendants. | Case No. 1:19-cv-14766-RMB-SCM<br>Case No. 3:19-cv-14767-MAS-SCM<br><br>Hon. John M. Vazquez, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3M COMPANY'S
MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINTS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 4

ARGUMENT ............................................................................................................................ 4

I.   NJDEP FAILS TO STATE A CLAIM AGAINST 3M IN THE PARLIN
     ACTION AND THE CHAMBERS WORKS ACTION ..................................................... 4

     A.   NJDEP's Spill Act and Brownfield Act Claims Fail As Against 3M.................... 4

     B.   The SACs Do Not State A Failure To Warn Claim Against 3M ........................... 6

          1.   3M Had No Common-Law Duty To Provide Warnings About Its
               Products To The State Itself ....................................................................... 6

          2.   The SACs Do Not Adequately Allege That 3M Breached Any
               Supposed Duty To Warn Old DuPont ........................................................ 9

          3.   The SACs Do Not Plead That 3M's Alleged Failure To Warn Old
               DuPont Proximately Caused the Alleged Contamination ........................ 11

     C.   The SACs Fail To State A Design Defect Claim Against 3M ............................. 12

CONCLUSION ....................................................................................................................... 14


## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................4

*Becker v. Smith & Nephew, Inc.*,
    2015 WL 268857 (D.N.J. Jan. 20, 2015) .......................................................10, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................4

*Burlington Northern & Santa Fe Railway Co. v. United States*,
    556 U.S. 599 (2009) ................................................................................................5

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3d Cir. 2001) ....................................................................................8

*City of Philadelphia v. Beretta U.S.A., Corp.*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000), aff'd, 277 F.3d 415 (3d Cir. 2002) ..............8

*City of Philadelphia v. Lead Indus. Ass'n*,
    994 F.2d 112 (3d Cir. 1993) ....................................................................................8

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ...................................................................................9

*Dingler v. Am. Med. Sys.*,
    2019 WL 6310057 (D.N.J. Nov. 25, 2019) ...........................................................13

*Dunham v. Wells Fargo*,
    2018 WL 3866705 (D.N.J. Aug. 14, 2018) .............................................................9

*Henhaffer v. Simeone & Raynor, LLC*,
    2016 WL 6305939 (D.N.J. Oct. 27, 2016) ..............................................................4

*Hopkins v. Fox & Lazo Realtors*,
    625 A.2d 1110 (N.J. 1993) ..................................................................................7, 8

*James v. Bessemer Processing Co.*,
    714 A.2d 898 (N.J. 1998) ........................................................................................9

*Joseph v. N.J. Transit Rail Operations, Inc.*,
    2013 WL 5676690 (D.N.J. Oct. 17, 2013) ............................................................13

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Leo v. Kerr-McGee Chemical Corp.*,
  37 F.3d 96 (3d Cir. 1994) .................................................................................................8

*Magistrini v. One Hour Martinizing Dry Cleaning*,
  109 F. Supp. 2d 306 (D.N.J. 2000) ...............................................................9, 10, 11

*Mendez v. Shah*,
  28 F. Supp. 3d 282 (D.N.J. 2014) .................................................................................12

*N.J. Dep't of Envtl. Prot. v. Dimant*,
  14 A.3d 780 (N.J. Super. Ct. App. Div. 2011) ...........................................................5

*N.J. Dep't of Envtl. Prot. v. Raritan Shopping Ctr., LP*,
  No. A-1150-16T1, 2018 WL 5019752 (N.J. Super. Ct. App. Div. Oct. 17, 2018) ...................................................................................................................................4

*N.J. Dep't of Envtl. Prot. v. Dimant*,
  51 A.3d 816 (N.J. 2012) ..........................................................................................5, 6

*N.J. Tpk. Auth. v. PPG Indus.*,
  197 F.3d 96 (3d Cir. 1999) .............................................................................................5

*Nelson v. Biogen Idec Inc.*,
  2013 WL 1700918 (D.N.J. Apr. 19, 2013) ...............................................................13

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*,
  991 F. Supp. 390 (D.N.J. 1997) ....................................................................................7

*Sich v. Pfizer Pharm.*,
  2017 WL 4407930 (D.N.J. Oct. 4, 2017) ..................................................................10

*Smith v. Kroesen*, 9 F. Supp. 3d 439
  (D.N.J. 2014) .....................................................................................................................9

*Tafaro v. Six Flags Great Adventure, LLC*,
  2018 WL 1535289 (D.N.J. Mar. 29, 2018) ..............................................................10

*Townsend v. Pierre*,
  110 A.3d 52 (N.J. 2015) ...............................................................................................11

*Wong v. Tobin*,
  2015 WL 3794606 (D.N.J. June 17, 2015) ..............................................................12

**Statutes**

N.J. STAT. ANN. § 2A:15-5.12 ............................................................................................13

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

N.J. STAT. ANN. § 2A:58C ................................................................................................10

N.J. STAT. ANN. § 58.10-23.11 .........................................................................................5

Defendant 3M Company ("3M") respectfully submits this memorandum of law in support of its motions to dismiss the Parlin and Chambers Works Second Amended Complaints ("SACs") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

**PRELIMINARY STATEMENT**

These actions arise from the alleged contamination of natural resources as a result of emissions and discharges into the air and water from two facilities—the Chambers Works facility and the Parlin facility—owned and operated by defendants other than 3M. *See, e.g.*, Chambers Works SAC ¶¶ 66-72; Parlin SAC ¶¶ 65-78.[2] NJDEP[3] alleges that these discharges occurred over the course of "125 years of operations" and involved "approximately 1,200 chemicals," among them per- and polyfluoroalkyl substances ("PFAS"). Chambers Works SAC ¶ 2. NJDEP does not (because it cannot) allege that the State's natural resources were contaminated by any PFAS used, discharged, or otherwise disposed of by 3M at either facility.

Instead, NJDEP alleges that 3M was the manufacturer of perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") that was sold to Old DuPont.[4] However, the Chambers Works SAC does not identify to which Old DuPont facility 3M allegedly shipped its PFOS- and

---

[1] 3M submits this combined brief in support of its motions to dismiss the SACs in *New Jersey Department of Environmental Protection, et al., v. E.I. DuPont De Nemours and Co., et al.*, No. 1:19-cv-14766 ("Chambers Works SAC") and *New Jersey Department of Environmental Protection, et al., v. E.I. DuPont De Nemours and Co., et al.*, No. 3:19-cv-14767 ("Parlin SAC"). *See* ECF 85.

[2] 3M is not a defendant in *New Jersey Department of Environmental Protection, et al., v. E.I. DuPont De Nemours and Co., et al.*, No. 2:19-cv-14758 (Pompton Lakes) or *New Jersey Department of Environmental Protection, et al., v. E.I. DuPont De Nemours and Co., et al.*, No. 1:19-cv-14765 (Repauno).

[3] Plaintiffs the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund are collectively referred to as "NJDEP" for purposes of this memorandum.

[4] For ease of reference, and consistent with its use throughout the SACs, this memorandum adopts the term "Old DuPont" to refer to E.I. du Pont de Nemours and Company.

PFOA- containing products (Chambers Works SAC ¶ 118), and the Parlin SAC offers only a vague allegation that 3M shipped unspecified "PFAS" to Parlin (Parlin SAC ¶ 4). Moreover, the SACs do not allege any facts concerning Old DuPont's purported use and discharge of PFOS from either the Chambers Works or Parlin sites, and NJDEP acknowledges that 3M phased out production of PFOS beginning in 2000 (Parlin SAC ¶ 4). Further, NJDEP alleges that Old DuPont did not purchase PFOA from 3M after 2002, and acknowledges that 3M phased out production of PFOA in 2002. (Chambers Works SAC ¶ 116; Parlin SAC ¶¶ 68, 88).

The Chambers Works and Parlin SACs assert three parallel counts against all Defendants: violation of the New Jersey Spill Compensation and Control Act ("Spill Act") (Chambers SAC Count I; Parlin SAC Count I), violation of the New Jersey Brownfield and Contaminated Site Remediation Act ("Brownfield Act") (Chambers SAC Count IV; Parlin SAC Count IV), and negligence (Chambers SAC Count IX; Parlin SAC Count VIII). Solely against 3M, NJDEP also asserts two strict liability claims: defective design (Chambers SAC Count XI; Parlin SAC Count X) and failure to warn (Chambers SAC Count XII; Parlin SAC Count XI). NJDEP's claims against 3M are deeply flawed, and should be dismissed for the following reasons.

*First*, NJDEP's Spill Act and Brownfield Act claims should be dismissed because the SACs fail to plead the requisite connection between 3M's alleged conduct and the alleged contamination. NJDEP does not contend that 3M ever owned or operated the Chambers Works or Parlin facilities. NJDEP also has not alleged (nor could it) that 3M exercised any control over or otherwise had any role in the alleged discharge of PFOA (or PFOS) from those facilities. Thus, there is no basis under those statutes for imposing liability on 3M.

*Second*, and notwithstanding the absence of any alleged contractual or other relationship with 3M, NJDEP invites the Court to impose on 3M a common-law duty to provide warnings to

2

the State itself about the alleged risks from the use and discharge of PFAS that 3M sold to others, such as Old DuPont. The Court should decline to do so. Recognizing such an expansive duty would have profound policy implications for all product sellers. And doing so would be especially inappropriate here because as far as 3M is aware, the proposed common-law duty is not supported by any New Jersey authority—much less any decision of the New Jersey Supreme Court—and it is not the role of a federal court to expand common law duties as the NJDEP proposes. Because there is no such cognizable duty owed to the State, any failure to warn claims based on such a putative duty, whether based on negligence or strict liability, should be dismissed.

*Third*, NJDEP's failure to warn claims would still fail if they were predicated on a more conventional alleged duty, *i.e.*, one running from 3M to its customer, Old DuPont. That is because the SACs do not plausibly allege *how* 3M purportedly breached its supposed duty to warn Old DuPont. In particular, the SACs are devoid of any allegations identifying what information was provided by 3M to Old DuPont about PFOA (or PFOS), or why the information provided supposedly was inadequate to discharge 3M's alleged duty. Nor does NJDEP allege any facts that, if proven, would show how the alleged breach of a 3M duty to warn Old DuPont caused the alleged contamination of the State's natural resources. Absent such allegations, the negligence and strict liability-failure to warn claims against 3M each fail as a matter of law.

*Fourth*, NJDEP's design defect claims fail because while the SACs refer generally to certain alleged risks associated with "PFAS," there is no allegation that such purported risks outweighed the utility of the specific 3M products at issue—an essential element of a design defect claim under New Jersey law. Nor does NJDEP proffer more than insufficient, conclusory allegations that an alternative design was feasible at the time 3M allegedly manufactured and sold PFOA (or PFOS) to Old DuPont.

Accordingly, the claims against 3M in the Parlin action and the Chambers Works action should be dismissed for failure to state a claim.

## STANDARD OF REVIEW

To "survive[] a motion to dismiss" challenging the sufficiency of a pleading, a complaint must "contain[] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Henhaffer v. Simeone & Raynor, LLC*, 2016 WL 6305939, at *1 (D.N.J. Oct. 27, 2016), attached to Certification of Donald J. Camerson, II, Esq. ("Camerson Certification"), as Exhibit A, (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' do not suffice." *Id.* at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In conducting its analysis, "the [C]ourt should [therefore] identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). It must then consider whether the "well-pleaded factual allegations" that remain, if any, "plausibly give rise to an entitlement for relief" given the elements of the claims pleaded. *Id.*

## ARGUMENT

### I. NJDEP FAILS TO STATE A CLAIM AGAINST 3M IN THE PARLIN ACTION AND THE CHAMBERS WORKS ACTION

#### A. NJDEP's Spill Act and Brownfield Act Claims Fail As Against 3M

NJDEP's Spill Act claims (Chambers Works SAC Count I, Parlin SAC Count I) and Brownfield Act claims (Chambers Works SAC Count IV, Parlin SAC Count IV)[5] against 3M fail

---

[5] *See N.J. Dep't of Envtl. Prot. v. Raritan Shopping Ctr., LP*, No. A-1150-16T1, 2018 WL 5019752, at *4 (N.J. Super. Ct. App. Div. Oct. 17, 2018), attached to Camerson Certification as Exhibit B, ("A responsible person under the Spill Act is to remediate hazardous substances that have been discharged in accord with requirements set forth in the Brownfield Act[.]").

4

because 3M's alleged manufacture and sale of PFOA or PFOS does not make 3M in any way responsible for discharges allegedly occurring at facilities owned or operated by other entities.[6]

NJDEP appears to contend that 3M is liable under the Spill Act because, according to NJDEP, 3M is a party that is "in any way responsible" for the alleged discharges. Chambers Works SAC ¶ 317; Parlin SAC ¶ 283 (citing N.J. STAT. ANN. § 58.10-23.11g). New Jersey courts, however, have construed the "in any way" language to require a plaintiff to establish the "necessary connection between the offending discharge and the discharger and/or owner of the property." *N.J. Dep't of Envtl. Prot. v. Dimant*, 14 A.3d 780, 788 (N.J. Super. Ct. App. Div. 2011), *aff'd,* 51 A.3d 816 (N.J. 2012). The "necessary connection" exists where there is "either ownership or control over the property at the time of the damaging discharge, or control over the hazardous substance that caused the contamination." *Id.*[7]

Here, NJDEP does not allege facts to show either condition is met. To the contrary, the SACs allege that the Chambers Works and Parlin facilities at which the alleged discharges purportedly occurred were at all times owned and operated by others. Chambers Works SAC ¶¶

---

[6] As part of its request for relief, NJDEP asks this Court to "[o]rder[] [Defendants, including 3M] to comply with the 2019 Directive." Chambers Works SAC p. 66. Insofar as NJDEP intends by this request to use lawsuits that involve claims limited to two facilities as a vehicle to attempt to secure (or bootstrap) enforcement of a Directive that purports to address alleged contamination throughout the state of New Jersey, NJDEP's request is improper for that reason, at a minimum.

[7] Federal case law interpreting "arranger" liability under CERCLA, "the federal analogue to the Spill Act," recognizes a similar requirement. *Dimant*, 14 A.3d at 787; *see also N.J. Tpk. Auth. v. PPG Indus.*, 197 F.3d 96, 106 (3d Cir. 1999) ("like CERCLA, the Spill Act places a burden on [plaintiff] to demonstrate some connection or nexus between the [contamination] at the sites in question and [defendant]"). In *Burlington Northern & Santa Fe Railway Co. v. United States*, 556 U.S. 599, 611-12 (2009), the U.S. Supreme Court contrasted "tak[ing] intentional steps to dispose of a hazardous substance," which may render an entity liable as an arranger under CERCLA, with "disposal [that] occurs as a peripheral result of the *legitimate sale* of an unused, useful product," which does not. (emphasis added). Even where a seller has "knowledge" that its "useful product" "will be leaked, spilled, dumped, or otherwise discarded" at some point by the buyer, such knowledge is "alone . . . insufficient" to trigger arranger liability under CERCLA. *Id.* at 612.

5

66-72; Parlin SAC ¶¶ 65-78. NJDEP also cannot show that 3M had "control over the hazardous substance that caused the contamination." *N.J. Dep't of Envtl. Prot. v. Dimant*, 51 A.3d 816, 830 (N.J. 2012) (citing one case in which the Spill Act claim "arose in the context of a parent corporation's liability for contamination caused by its subsidiary's operations" and another in which the claim was asserted against "the subsequent landowner one of whose underground tanks still leaked during her ownership"). In fact, there is no allegation in the SACs that 3M controlled the PFOA at the time of its alleged emission, discharge, or disposal from the Chambers Works or Parlin facilities, nor could there be. If anything, the SACs allege the opposite. The Parlin SAC affirmatively alleges that 3M sales of PFOA were to Old DuPont in Parkersburg, West Virginia, and that it was Old DuPont that allegedly "shipped" PFOA-containing products it manufactured from its West Virginia facility "to the [Parlin] Site." Parlin SAC ¶ 124. The Chambers Works SAC alleges, in part, that "Old DuPont transferred PFOA-containing waste generated at Washington Works [in West Virginia] to Chambers Works, which was discharged through the WWTP or landfilled on-site." Chambers Works SAC ¶ 154. Accordingly, each SAC fails to allege the "necessary connection" between 3M and the alleged discharges, and the Spill Act and Brownfield Act claims against 3M thus necessarily fail.[8]

The Spill Act and Brownfield Act claims against 3M should be dismissed.

> **B.** **The SACs Do Not State A Failure To Warn Claim Against 3M**
>
> > **1.** **3M Had No Common-Law Duty To Provide Warnings About Its Products To The State Itself**

---

[8] As discussed, NJDEP alleges that 3M phased out production of PFOA in 2002 and that Old DuPont stopped purchasing PFOA from 3M in that same year. *See* Parlin SAC ¶¶ 68, 88. Consequently, any claim against 3M for contamination that allegedly occurred during any period after 2002 fails for that reason as well.

6

NJDEP appears to predicate its failure to warn claims not on any purported duty that 3M may have had to provide warnings to its customer, Old DuPont,[9] but rather on a supposed duty to provide warnings directly to the State (and NJDEP). *See* Chambers Works SAC ¶¶ 412 (duty allegedly owed to "Plaintiffs"), 444 ("State" and "Plaintiffs"); Parlin SAC ¶¶ 366 ("Department and Administrator"), 398 ("State" and "Plaintiffs"). Specifically, NJDEP asks this Court to impose on 3M a "duty to warn the State about the dangers of PFAS because, among other things, the State is the trustee, for the benefit of its citizens, of all natural resources within its jurisdiction; because the Department and the Commissioner are charged with enforcing the State's environmental laws and regulations; and because the State maintains a 'quasi-sovereign' interest in the well-being of its residents." Chambers Works SAC ¶ 444; Parlin SAC ¶ 398. The Court should reject NJDEP's attempt to impose such an extraordinarily burdensome and remarkably expansive common-law duty to warn on product sellers.

Under New Jersey law, the existence of a duty presupposes some relationship between the parties. *See, e.g.*, *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993) (duty inquiry entails identifying, *inter alia*, "the relationship of the parties"). Here, however, NJDEP does not allege any relationship between itself (or the State) and 3M. To the contrary, the predicate for its claims are alleged sales by 3M *to Old DuPont*. Thus, whatever duty 3M may have had to provide information about its products to Old DuPont, it had no separate common-law duty of disclosure to the State. And "[w]hen no duty exists, dismissal for failure to state a claim is proper." *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 991 F. Supp. 390, 399 (D.N.J. 1997).

---

[9] The Chambers Works and Parlin SACs do not allege any PFOA sales or other relationship between 3M and any of Defendants Chemours, Chemours FC, DowDuPont Inc., Corteva, or DuPont Specialty Products USA, LLC. To the extent they are directed to 3M, 3M disputes the substantive allegations of the SACs.

7

Moreover, the duty inquiry involves a careful examination of "all of the circumstances in light of considerations of public policy." *Hopkins*, 625 A.2d at 1116. The policy consequences of recognizing the putative common-law duty NJDEP advances—which would effectively impose on every product manufacturer and seller an obligation to directly warn the State about the potential risks associated with any product sold to a customer whose use of the product might conceivably cause the product to come in contact with the State's property or its natural resources—would be extraordinary. And, it would be especially inappropriate to endorse such a seemingly boundless[10] and heretofore unrecognized duty here. As the Third Circuit has repeatedly cautioned, "'[a] federal court may act as a judicial pioneer when interpreting the United States Constitution and federal law'" but "'[f]ederalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law'" because "'[o]ur role is to apply the current law of the jurisdiction, and leave it undisturbed.'" *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994) (quoting *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993)); *accord e.g.*, *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 541 (3d Cir. 2001) ("It is not the role of a federal court to expand or narrow state law in ways not foreshadowed by state precedent."); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 906 (E.D. Pa. 2000) ("If I must choose between an interpretation of Pennsylvania law which reasonably restricts liability, and another which expands it, prudence dictates I choose the narrower path."), *aff'd*, 277 F.3d 415, 421 (3d Cir. 2002) ("public nuisance is

---

[10] Indeed, the State also alleges that 3M had a duty to warn unspecified "*others*" besides "users and buyers of its PFAS" and "the State." Chambers Works SAC ¶ 445 (emphasis added). Such a vague and conclusory allegation is clearly entitled to no weight under *Twombly* and *Iqbal*. And in any event, even if the allegation of a duty to warn unspecified "others" were credited, any claim based on such a putative duty would fail for the reasons set forth in the next section.

8

a matter of state law, and it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent") (citing *Camden Cty. Bd.* and *Kerr-McGee*); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("federal courts must be cautious when making pronouncements about state law and '[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path'").

For this reason alone, NJDEP's failure to warn theory, whether offered as the basis for negligence or strict liability claims (Chambers Works SAC Counts IX, XII; Parlin SAC Counts VIII, XI), fails.[11]

### 2. The SACs Do Not Adequately Allege That 3M Breached Any Supposed Duty To Warn Old DuPont

The far-reaching duty to the State proposed by NJDEP should be rejected for the reasons discussed. But even if NJDEP were relying on a more conventional alleged duty, *i.e.*, a duty by 3M to warn its customer, Old DuPont, the common law claims still fail for the additional reason that the SACs contain no factual allegations concerning the warnings 3M provided to Old DuPont, or how those warnings were negligently provided or otherwise purportedly inadequate.

NJDEP alleges that 3M failed to warn that its products "would be released to the environment during their normal use, and of the widespread, toxic, and persistent effects of such

---

[11] In New Jersey, in order to sustain a claim of negligence, "'the plaintiff must establish: (1) a duty of care owed to the plaintiff by the defendant; (2) that defendant breached that duty of care; and (3) that plaintiff's injury was proximately caused by defendant's breach.'" *Dunham v. Wells Fargo*, 2018 WL 3866705, at *3 (D.N.J. Aug. 14, 2018), attached to Camerson Certification as Exhibit C, (quoting *Smith v. Kroesen*, 9 F. Supp. 3d 439, 442 (D.N.J. 2014)). A negligence and strict liability failure to warn claim are the same but for one difference: "under a negligence theory, plaintiff must establish 'that the specific defendant knew or should have known of the potential hazards of the product.'" *Magistrini v. One Hour Martinizing Dry Cleaning*, 109 F. Supp. 2d 306, 312 (D.N.J. 2000) (quoting *James v. Bessemer Processing Co.*, 714 A.2d 898, 908 (N.J. 1998)).

9

releases." Chambers Works SAC ¶ 445; Parlin SAC ¶ 399. However, the SACs nowhere allege (i) any facts regarding what warnings or instructions accompanied the PFOA- (or PFOS-)containing products that 3M allegedly sold to Old DuPont, or (ii) how those warnings or instructions supposedly were inadequate with regard to either the method of suggested disposal or the alleged environmental or health risks of discharge from customers' facilities. Those omissions are fatal to NJDEP's failure to warn claims against 3M because it is NJDEP's burden to "demonstrate that no adequate warning was provided." *Magistrini*, 109 F. Supp. 2d at 312.

Indeed, courts in this District have not hesitated to dismiss failure-to-warn claims where, as here, a complaint fails to include "allegations concerning what warning was provided, [or] what warning would have been provided by a reasonably prudent person in the same circumstances. . . ." *Tafaro v. Six Flags Great Adventure, LLC*, 2018 WL 1535289, at *11 (D.N.J. Mar. 29, 2018), attached to Camerson Certification as Exhibit D; *see also Sich v. Pfizer Pharm.*, 2017 WL 4407930, at *3 n. 1 (D.N.J. Oct. 4, 2017), attached to Camerson Certification as Exhibit E, (dismissing claim because plaintiffs did not allege "any facts related to the warning label"); *Becker v. Smith & Nephew, Inc.*, 2015 WL 268857, at *4-5 (D.N.J. Jan. 20, 2015), attached to Camerson Certification as Exhibit F, (dismissing claim because complaint did not specify whether the defendant "gave a warning that did not reveal a particular danger, gave a warning that was untimely, or gave no warning at all").[12]

---

[12] While NJDEP's claims are exempt from New Jersey's Product Liability Act (*see* N.J. STAT. ANN. §§ 2A:58C–6, 2A:58C–1(b)(4) (West 1987)), that statute's definition of an adequate warning serves as relevant guidance for common law failure to warn claims. *See Magistrini*, 109 F. Supp. 2d at 310 n.4 (recognizing that, although NJPLA does not apply to environmental tort actions, the result under the law would be the same if the claims for strict liability and negligence in failure to warn claims were analyzed under the NJPLA).

10

As a result, each of NJDEP's claims predicated on an alleged breach of a duty to warn Old DuPont (Chambers Works SAC Counts IX, XII; Parlin SAC Counts VIII, XI) should be dismissed.

### 3. The SACs Do Not Plead That 3M's Alleged Failure To Warn Old DuPont Proximately Caused the Alleged Contamination

The SACs also fail to allege a causal connection between 3M's alleged failure to warn Old DuPont and the alleged injuries, notwithstanding that each of the putative failure to warn theories requires causation. *See, e.g.*, *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (negligence); *Magistrini*, 109 F. Supp. 2d at 311 (strict liability failure to warn). As discussed, the SACs fail to allege what warnings and instructions were provided, let alone how or why such warnings and instructions were insufficient.

Further, and to the extent NJDEP's claims were to concern an alleged failure to warn Old DuPont, the SACs do not allege that any such supposedly absent warning would have added information that NJDEP contends was not independently known to Old DuPont or would have altered Old DuPont's alleged use or disposal practices. Nor do the SACs allege any other facts to show that the alleged inadequacy of 3M's warnings to Old DuPont resulted in the disposal practices at the Chambers Works or Parlin facilities about which NJDEP complains or the contamination of the sites and natural resources that allegedly resulted from those disposal practices. On the contrary, NJDEP's factual allegations concerning Old DuPont (which we understand are disputed) are completely inconsistent with the claim that NJDEP's alleged injuries resulted from 3M's alleged failure to warn. The SACs allege that for most of the "over 50 years" during which Old DuPont is alleged to have used PFAS, Old DuPont "had clear and unequivocal knowledge that[] PFOA, PFNA, and other PFAS compounds are extremely resistant to degradation, they persist indefinitely in the environment, they bioaccumulate in blood, and they pose a substantial threat to human health and the environment." Chambers Works SAC ¶ 4.

11

For seemingly every purported failure by 3M to provide particular information to Old DuPont, NJDEP alleges that Old DuPont had the same, and frequently independently-sourced, information regarding PFAS. For example, the SACs allege that Old DuPont was first to "issue[] internal warnings about the toxicity associated with their PFOA products as early as 1961" (Chambers Works SAC ¶ 123; Parlin SAC ¶ 95) and that in 1978, "based on information [it] received from 3M," Old DuPont "initiated a plan to review and monitor the health conditions of potentially exposed workers in order to assess whether any negative health effects could be attributed to PFOA exposure" (Chambers Works SAC ¶ 130; Parlin SAC ¶ 102). The SACs fail to allege any gap in Old DuPont's knowledge such that an allegedly deficient warning from 3M could plausibly be the cause of the alleged harm, and instead demonstrate quite clearly the absence of proximate cause.

NJDEP's wholesale failure to plead facts to establish the requisite causation dooms its failure to warn claims as against 3M. *See, e.g.*, *Wong v. Tobin*, 2015 WL 3794606, at *2 (D.N.J. June 17, 2015), attached to Camerson Certification as Exhibit G, (dismissing claim where complaint "offers scant facts to make a causal link between the conduct alleged and the injury suffered by Plaintiff").

### C. The SACs Fail To State A Design Defect Claim Against 3M

NJDEP's design defect (Chambers SAC Count XI, Parlin SAC Count X) claims similarly fail. A "plaintiff must plead either that the product's risk outweighs its harm, or that an alternate design exists, in order to state a claim for a design defect." *Mendez v. Shah*, 28 F. Supp. 3d 282, 297-98 (D.N.J. 2014). Here, the pleadings do not satisfy either requirement.

NJDEP alleges only that "the foreseeable *risk* to public health and welfare . . . outweighed *the cost to 3M* of reducing or eliminating such risk." Chambers Works SAC ¶ 434; Parlin SAC ¶ 388 (emphasis added). Regardless, NJDEP offers no allegations that weigh the utility of the 3M

12

product against any alleged risks. Similarly, as to the putative availability of a feasible alternative design for 3M's products, the SACs make only the conclusory allegation that "3M knew or should have known about reasonably safer feasible alternatives to PFAS[.]" Chambers Works SAC ¶ 435; Parlin SAC ¶ 389. Yet, they do not identify what those "feasible alternatives" supposedly were— let alone as to PFOA and PFOS specifically—or plead any other supporting facts to substantiate NJDEP's bald assertion. The failure to include such allegations requires dismissal of NJDEP's design defect claims. *See Dingler v. Am. Med. Sys.*, 2019 WL 6310057, at *3 (D.N.J. Nov. 25, 2019), attached to Camerson Certification as Exhibit H, (dismissing design defect claim where plaintiff did not "plead that the Products' risk [*sic*] of harm outweigh their utility" or "allege any alternative designs"); *Becker*, 2015 WL 268857, at *3-4 (noting that "[t]o evaluate" whether a design is defective, "New Jersey courts perform a risk-utility analysis that considers seven factors," and dismissing a design defect claim where the "[t]he complaint contain[ed] no factual allegations that would satisfy these elements"); *Nelson v. Biogen Idec Inc.*, 2013 WL 1700918, at *1 (D.N.J. Apr. 19, 2013), attached to Camerson Certification as Exhibit I, (dismissing design defect claim where plaintiff alleged that "'there were safer alternative designs that were economically and technologically feasible by the application of reasonable scientific knowledge'" but "Plaintiff's Complaint provide[d] no facts, whatsoever, to support this assertion").[13]

---

[13] Because NJDEP has failed to adequately allege any substantive claim against 3M, its punitive damages requests (Chambers Works SAC Counts IX (Negligence), XI (Defective Design), and XII (Failure to Warn); Parlin SAC Counts VIII (Negligence), X (Defective Design), and XI (Failure to Warn)) should be dismissed. *See, e.g.*, *Joseph v. N.J. Transit Rail Operations, Inc.*, 2013 WL 5676690, at *14 (D.N.J. Oct. 17, 2013), attached to Camerson Certification as Exhibit J, (no basis for punitive damages because defendants were entitled to judgment on all substantive claims). NJDEP also cannot recover punitive damages based on any form of alleged negligence, including gross negligence. N.J. STAT. ANN. § 2A:15-5.12(a) (punitive damages cannot be awarded "by proof of any degree of negligence including gross negligence").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against 3M in the Parlin action and the Chambers Works action for failure to state a claim.

Dated: November 23, 2020

          Respectfully submitted,

          By: */s/Donald J. Camerson*_____

          **BRESSLER, AMERY & ROSS, P.C.**
          Donald J. Camerson, II, Esq.
          325 Columbia Turnpike
          Florham Park, NJ 07932
          Telephone: (973) 514-1200
          Fax: (973) 514-1660
          djcamerson@bressler.com

          **MAYER BROWN LLP**
          Andrew J. Calica (*pro hac vice* pending)
          Jordan Sagalowsky (*pro hac vice* pending)
          1221 Avenue of the Americas
          New York, NY 10020
          Telephone: (212) 506-2500
          acalica@mayerbrown.com
          jsagalowsky@mayerbrown.com

          *Counsel for Defendant 3M Company*