**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY, et al.,<br><br>Defendants. | Civil Action No. 2:19-cv-14758-JMV-SCM<br>(Hon. John M. Vazquez, U.S.D.J.) |
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-14765-NHL-JS<br>(Hon. Noel L. Hillman, U.S.D.J.) |
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-14766-RMB-JS<br>(Hon. Renee M. Bumb, U.S.D.J.) |

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, et al.,

                                    Plaintiffs,

v.

E. I. DU PONT DE NEMOURS AND
COMPANY, et al.,

                                    Defendants.

Civil Action No. 3:19-cv-14767-MAS-ZNQ
(Hon. Michael A. Shipp, U.S.D.J.)

## STIPULATED [~~PROPOSED~~] ORDER ESTABLISHING DOCUMENT AND ELECTRONICALLY STORED INFORMATION PRODUCTION PROTOCOL

Plaintiff New Jersey Department of Environmental Protection, Plaintiff Commissioner of the New Jersey Department of Environmental Protection, and Plaintiff Administrator of the New Jersey Spill Compensation Fund  (collectively, "Plaintiffs"), and Defendant E. I. du Pont de Nemours and Company, Defendant The Chemours Company, Defendant The Chemours Company FC, LLC, Defendant Corteva, Inc., Defendant DuPont de Nemours, Inc., Defendant DuPont Specialty Products USA, LLC, and Defendant 3M Company (collectively, "Defendants") (altogether, "Parties," and each individually a "Party") by and through their attorneys, have stipulated and agreed to the entry of a Stipulated Order Establishing Document and Electronically Stored Information Production Protocol (the "Protocol" or "Order") governing the discovery, collection, and production of documents, including electronically stored information ("ESI"), in response to discovery requests ("Discoverable Information") in the above-captioned litigations (collectively, the "Actions").

The Parties will engage in discovery proceedings in the Actions, and their counsel have engaged in substantive discussions regarding the discovery of documents and ESI.  The Parties

mutually seek to reduce the time, expense, and other burdens of discovery of hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of these Actions. This Protocol is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the common law, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence.

This Protocol is intended to supplement the Federal Rules of Civil Procedure and to promote a "just, speedy, and inexpensive determination" of these Actions. Fed. R. Civ. P. 1.

The Court, having reviewed the agreement and stipulations of the Parties, finds that good cause supports the entry of this Protocol, and that justice so requires.

Accordingly, pursuant to Rule 26 of the Federal Rules of Civil Procedure, it is hereby ORDERED that all the discovery, collection, and production of documents or ESI in these Actions shall be subject to the terms and provisions set forth below.

## I.    **GENERAL PROVISIONS**

1.    **Discoverability and Admissibility.** Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to discoverability or admissibility are preserved and may be asserted at any time.

2.    **Cooperation and Proportionality.** The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and documents, the designation of documents as protected under the stipulated Discovery Confidentiality Order that the Parties intend to file with the Court

in these Actions, and the identification of documents or parts thereof on grounds of privilege or attorney work product doctrine protection.  This Protocol is not intended to expand the Parties' obligations under Rules 1, 26, and 34 of the Federal Rules of Civil Procedure.

3.   **Meet and Confer.**   The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol or other discovery-related matters.   To the extent a Party that is producing Discoverable Information (a "Producing Party") reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure.

4.   **Modification.**   This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court.  Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information.

5.   **Superseding Effect.**  This Protocol supersedes any prior discussions, instructions set forth in discovery requests or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements, instructions or discussions, the terms of the Protocol control.

6.   **Materials from Prior Litigation.**   To the extent that a Party propounds discovery requests (a "Requesting Party") upon a Producing Party seeking the reproduction in these Actions, in whole or in part, of documents which the Producing Party has produced in other litigation(s), a Producing Party is not obligated to re-run or re-validate those production sets.  Nor is a Producing

4

Party obligated to recollect the documents that formed the basis for such prior document production(s) for the purpose of obtaining additional metadata as set forth in Parts III and IV below.  It is the parties' intent that such productions will be reproduced in these Actions in the format in which they have previously been produced.  If a Producing Party makes a production in other litigation(s) after this Protocol is approved by this Court, and that production is inconsistent with the terms of this Protocol, the Producing Party shall notify the Receiving Party of those inconsistencies before making the reproduction in these Actions.  The Parties will meet and confer to resolve the treatment of those inconsistencies.  If the inconsistencies are immaterial to these Actions, it is the Parties' preference that the reproduction be made in the format in which it was previously produced in other litigation(s).  Moreover:

      a.     A Producing Party is not obligated to recollect, re-process, or re-ingest the documents that formed the basis for such prior productions for the purpose of obtaining additional metadata unless the Requesting Party comes forward with a particularized need for additional metadata as to a specific document.  In such instances, the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

      b.     The Producing Party, in its discretion, may elect to process and produce more expansive metadata and/or production fields associated with documents that are part of a re-production.

      c.     The Parties agree to meet and confer concerning incorporation of confidentiality treatment and/or designations assigned to reproduced documents from prior litigation, and/or other appropriate measures where circumstances warrant different confidential treatment of specific documents in these Actions, such as inconsistencies between protective orders entered in prior litigation and the Discovery Confidentiality

Order entered in these Actions.

   d.     A Requesting Party may make reasonable requests, with which a Producing Party shall reasonably comply, for the Producing Party to provide an explanation of the methodology and date ranges used to assemble the prior productions, if known.

   e.     The utilization of prior productions by a Producing Party will not exempt that Party from having to undertake additional and/or supplemental efforts to produce further Discoverable Information in order to account for additional electronic search terms, document custodians, expanded date ranges, etc., that were not taken into account in assembling and serving the prior productions and relevant information, about which the Parties shall meet and confer in good faith.

## II.   **SCOPE & PRESERVATION**

   1.     **General.**  The procedures and protocols outlined herein govern the production of Discoverable Information by all Parties to these Actions, whether they currently are involved or become so in the future.  The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information.

   2.     **ESI.**  Shall mean any electronically stored files, including but not limited to: email; word-processing documents; spreadsheets; electronic slide presentations; databases; and other reasonably accessible data reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

   3.     **Preservation and Not Reasonably Accessible ESI.** The Parties agree that the circumstances of these Actions do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that the Parties agree is not reasonably accessible, unless the Producing Party believes in good faith that not reasonably accessible ESI is likely to contain

significant relevant information not otherwise available in reasonably accessible sources.   For purposes of this Paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

   a. Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to:  disaster recovery backup tapes and media; continuity of operations systems; and data or system mirrors or shadows.

   b. Voicemail recordings to the extent not subject to the provisions of this Protocol concerning embedded objects. (*e.g.*, a voicemail recording embedded in or attached to an email).

   c. Mobile devices and ESI stored on mobile devices, including smart phones or tablets, to the extent data stored on such mobile devices that is available from other reasonably accessible electronic sources, such as an email server, system, or application that operates commercially accepted back-up or synchronization technology.  Data that is not synchronized is not reasonably accessible ESI.

   d. Legacy Data, or any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use.

   e. Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

   f. Online access data such as temporary internet files, history, cache, cookies, and the like.

   g. Corrupted data or otherwise inaccessible files that cannot be recovered by the systems currently in use.

   h. Data stored in Random Access Memory ("RAM"), cache memory, or in

temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

      i.      Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

      j.      Data stored on printers, photocopiers, scanners, and fax machines.

      k.      Data stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure.

4.      **Identification of Collection Sources.**  The Parties shall confer regarding the identification and collection of sources of relevant Discoverable Information.  The Parties shall meet and confer regarding:  (a) the identity and/or role of custodians possessing relevant information from whom documents will be collected and produced; (b) relevant data sources, including custodial, non-custodial, and third-party documents; and (c) any applicable and appropriate timeframes for the collection, review, and production of documents.

5.      **Search Methodology**. The Parties will confer regarding search methodologies, use of technology assisted review ("TAR") or similar technologies, search terms, date restrictions and custodian restrictions.  Before implementing any search based on key word search terms, the Producing Party will provide a list of proposed search terms to the Requesting Party and the Parties will discuss those terms and any additional terms, or other requested changes, proposed by the Requesting Party.  The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive documents within the search results and

production sets, including exchanging "hit count" reports and having Producing Party perform random sampling of nonresponsive sets and sharing those results. A Producing Party will not, however, be required to share the sampling of nonresponsive documents with the Requesting Party. The exchange of this information shall not waive a Producing Party's or Requesting Party's objections or rights regarding the production of any documents.

## III.   **FILTERING ESI**

1.   **De-duplication.** A Producing Party will make reasonable efforts to de-duplicate identical ESI across its own productions, not to include prior productions that are re-produced in these Actions, as follows:

   a.   <u>Electronic Documents that Are Not Email</u>. Duplicate non-email electronic documents (such as Microsoft Word documents) may be identified based upon a commercially accepted method (*e.g.*, MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group, however, the Producing Party will identify the additional custodian(s) (*i.e.*, All Custodians metadata field set forth in Paragraph IV.10 below, and based upon custodians agreed) for duplicate documents not produced to the extent such information can be automatically populated by the processing of the documents.

   b.   <u>Email</u>. Duplicate email or other messaging files may be identified based upon a commercially accepted method (*e.g.*, MD5 hash values) generated for the entire email family including:   To; From; CC; BCC; Body; Message ID; and Attachment Properties. Email families bearing an identical value are considered a duplicate group. The Producing Party may produce only one document image or native file for duplicate

ESI documents within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) (*i.e.,* All Custodians metadata field set forth in Paragraph IV.10 below, and based upon custodians agreed) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools.

   c. Subject to conferral and joint agreement of the Parties, a Party may apply commercially accepted "email thread suppression" techniques and/or "near-duplicate de-duplication" software in producing ESI, although nothing herein precludes a Party from using such techniques as a review tool.

  2. **De-NISTing.** ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

  3. **Zero-byte Files.** The Parties shall filter out files identified as zero bytes in size and any logo files.

  4. **Embedded Objects.** Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI.  Non-substantive embedded files, such as MS Office embedded images and email in-line images (logos, etc.), need not be extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

## IV.   PRODUCTION FORMAT

1.   **TIFF/Native File Format Production.**   The default production format for unstructured discoverable ESI will be black-and-white Group IV single-page TIFF (300 DPI) with document-level extracted text files or Optical Character Recognition ("OCR") text files (for redacted records) and a standard delimited .DAT file containing document-level text files and the agreed upon metadata fields.  Further:

a.   ESI will be produced in "last saved" or "last modified" format.

b.   If a color image is produced in black and white, a Party may request the Producing Party produce the original native file.  The Parties agree that they shall not unreasonably withhold production of any document in native format where color is needed for interpretation of that document, to the extent the source document is reasonably accessible.

c.   All ESI whose native format is that of a spreadsheet (*e.g.,* Lotus, Microsoft Excel), presentation formats (*e.g.,* PowerPoint), audio files, video files and other types of ESI that cannot be accurately converted to .tiff images, making the review of that ESI in .tiff format unduly burdensome or impractical to a Party, shall be produced with a single-page placeholder (Group IV .tiff image) stating "Document Produced Natively" and shall be produced in its original native format, including, but not limited to, the logical formulae within the cells of any spreadsheet and any metadata contained in the file.

d.   A Producing Party retains the option to instead produce ESI in native formats.

2.   **Document Text.**   For documents that were originally created and stored as electronic files and which do not have redactions, where reasonably available, the Producing Party

will produce the extracted full text (not OCR) from the body of each document in individual document-level TXT files. OCR text will be provided for documents without available extracted text (*e.g.*, non-searchable PDFs). Image cross-reference files will also be produced whether the text is extracted or OCR. For documents that were originally stored as electronic files and which have redactions, the OCR text from the redacted image(s) associated with each document will be produced, in individual document-level TXT files. "TEXT" folder directories will group 1,000 document text files each, separate from image directories.

3. **Database Production.** The Parties shall meet and confer on the identity of any databases and/or files created in proprietary applications (*e.g.*, structured data), and the format in which responsive data should be produced from those systems (*e.g.*, export to Microsoft Access or SQL).

4. **Numbering/Endorsement.** All produced Discoverable Information will have a unique Control Identification Number or bates number assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique identifier. For Discoverable Information produced in TIFF image format, each TIFF image will have a legible, unique page identifier electronically endorsed onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the bates numbers it uses across its productions. Separate folders will not be created for each document. Further:

a. In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, and/or designated as such pursuant to the stipulated Discovery Confidentiality Order that the Parties intend to file with the Court in these Actions, governing the production of confidential materials in these Actions,

documents and ESI should be marked in accordance with the stipulated Discovery Confidentiality Order. Each responsive document produced in native format will have any confidentiality designation identified in the filename of the native file, or indicated on its corresponding TIFF placeholder.

b.      The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

5.      **Redactions**. For documents that have been redacted, OCR matching the redacted version of the document shall be provided as "text" for such documents. To the extent any document that would have been produced in native format pursuant to the instruction above has been redacted, .tiff images and OCR of the redacted document will suffice in lieu of a native file. The Producing Party shall, however, make reasonable efforts to ensure that any such documents that are produced only as .tiff images are formatted so as to be readable.

6.      **Scanned Documents & Hard Copies.** The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format set forth in Paragraph IV.1 above. Further:

a.      When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, the Parties shall attempt to logically unitize scanned hard copy documents) and be produced in the order in which they are kept in the usual course of business.

b.      All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.

13

c.     The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort (including but not limited to affixed sticky notes which will also be imaged and produced) not appearing on any other copy or any copy containing different attachments from any other copy, provided that such notation is in any way relevant to the subject matter of this lawsuit.

d.     Consistent with Federal Rules of Civil Procedure 26 and 34, a Producing Party may make hard copy records available to a Requesting Party for inspection and copying.  In such instances, the Parties shall meet and confer regarding the time, location, and other considerations with respect to the inspection and copying.

7.     **Native Files.**  The Parties agree that the default production format for unstructured discoverable ESI is the imaged format set forth in Paragraph IV.1 above.  Subsequent to the production of image formats, the Requesting Party may within a reasonable time and upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

a.     The Requesting Party shall provide a list of bates numbers of the imaged documents sought to be produced in native file format.  The Requesting Party also shall provide the reasons for the request.

b.     The Producing Party shall either agree and produce the native files, or object to the demand for any particular file as unreasonable as follows:

i.      Within ten (10) calendar days, or such time or extensions of the ten (10) day period to which the Parties agree, the Producing Party will respond in writing, either agreeing to produce the requested documents or setting forth its reason for objection to the production of the requested native format files.

14

ii.     If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed to by the Parties.

iii.    If the Producing party does not agree to the request, the Parties will promptly meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court for resolution.

8.    **Encrypted Files.**  To the extent practical, the Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected natives files produced to the extent the passwords are reasonably available.

9.    **Production Media.**  The Producing Party may produce documents via a secure file transfer mechanism.  If the production is larger than 10 gigabytes, parties may produce documents on an external hard drive ("Production Media").  All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

10.    **Metadata.**  The Parties agree to undertake reasonable efforts to produce a load file containing, if available in the normal course and reasonably practical to do so, the metadata fields below, and to the extent a document is not redacted (separately addressed):

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer – Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer – Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer – Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdEndAttach | Integer – Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| AttachmentCount | Integer – Text | | In case where document contains attachment/s, the number of attachments included within the document | In case where document contains attachment/s, the number of attachments included within the document |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| All Custodians | Text | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein |
| From | Text – paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text – paragraph | | | Subject of message |
| Date/Time_Sent | Date (mm/dd/yyyy hh:mm:ss) | | | Date and Time message sent |
| Date/Time_Rcvd | Date (mm/dd/yyyy hh:mm:ss) | | | Date and Time message received |
| FileName | Text – paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |

16

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| Date/Time_Created | Date/Time (mm/dd/yyyy hh:mm:ss) | | Date and time file was created | |
| Date/Time_Modified | Date/Time (mm/dd/yyyy hh:mm:ss) | | Last modified date and time | |
| Sort_Date/Time | Date/Time (mm/dd/yyyy hh:mm:ss) | | Date and time taken from (Email) Date/Time_Sent, (Email) Date/Time_Rcvd, or (EDocs) Date/Time_Modified, repeated for parent document and all children items to allow for date sorting. | |
| Title | Text – paragraph | | Title from document metadata | |
| Author | Text – paragraph | | Document author from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| OriginalFilePath | Text | | File path of the native document as it existed in its original environment. | File path of the native document as it existed in its original environment. |
| NativeLink | Text – paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| TextLink | Text – paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Redaction | hasredaction(onDocument); hasredaction(onMetadata) | | States whether a document or metadata of a document has been redacted | States whether a document or metadata of a document has been redacted |
| Message ID | Text | | | MS Outlook Message ID or similar number in other message systems |

a.      No Party has an obligation to create or manually code metadata fields that do not exist as part of the original metadata of the electronic document except for: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian.  Custodians should be identified using the convention "Last Name, First Name."

b.      The Parties may rely on the metadata automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files to ensure the metadata's accuracy.

c.      The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity or that is required by applicable law or regulation or as permitted by the Discovery Confidentiality Order governing these Actions.  Redactions must be limited to only language or information within document deemed protected.  The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the document.

d.      If a document that otherwise would be produced in native format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol.  The native file version of redacted documents need not be produced unless the Parties agree otherwise.

11.      **Load Files**.  The following load files may be combined to address all content provided within a single production (*i.e.*, all documents produced on a single piece of media or through a single file transfer):

a.      Image Cross-Reference Load File.  Provide a comma-delimited image load file that contains document boundary reference data, page counts, and media volume information.

b.      Text Cross-Reference Load File.  For all TXT files created in accordance with Paragraph IV.2 above, provide a comma-delimited load file with each document's beginning bates number along with the full path to the associated extracted text/OCR text file.

c.      Native Cross-Reference Load File.  For all native files, provide a comma-delimited load file with each document's bates number along with the full path to the produced native file.

d.      Structured ESI Cross-Reference Load File.  For all reports produced under Paragraph IV.3 above, provide a comma-delimited load file with each document's bates number along with the full path to the produced report.

12.      Notwithstanding the foregoing, if any Discovery Materials are produced in a form that is not reasonably useable by the Requesting Party, the Requesting Party reserves the right to request the records to be delivered in a different form, about which the Parties will confer if

necessary, including, but not limited to, native format.

## V.   **OTHER ISSUES**

1.   **Costs.**  The cost of preserving, collecting and producing documents shall be borne by the Producing Party.  In the event, however, that a Requesting Party requests ESI, documents, or information that would result in the production of cumulative or repetitive discovery that otherwise imposes an undue burden or expense upon a Producing Party, the Producing Party may object.  The Parties shall work to resolve any such objection.  In the event the Parties are unable to resolve such an objection, and upon substantiation of that objection in writing by the Producing Party, the Producing Party may move the Court for an order shifting the cost of producing such discovery to the Requesting Party.

2.   **English Language.**  To the extent any document exists in more than one language, the document shall be produced in English, if available in the ordinary course of business or in the custodian's files.  If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation.

3.   **Agreed Discovery Confidentiality Order.**  The terms of the separate stipulated Discovery Confidentiality Order governing production and treatment of confidential information that the Parties intend to file with the Court in these Actions also govern all production pursuant to this Protocol.

4.   **Privilege Log.**  The Parties will meet and confer further regarding privileged-document logging.

20

5.    **Producing Party's Right to Review Own Documents.**   Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.


The undersigned Parties consent to the entry of this Order.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:___/s/Gwen Farley_____
    Gwen Farley
    Deputy Attorney General
    R.J. Hughes Justice Complex
    25 Market Street
    P.O. Box 093
    Trenton, New Jersey 08625-0093
    Ph. (609) 376-2761

    *Attorney for Plaintiffs*


KELLEY DRYE & WARREN LLP

By:__/s/William J. Jackson_____
    William J. Jackson
    John D.S. Gilmour
    515 Post Oak Blvd. Suite 900
    Houston, Texas 77027
    Ph. (713) 355-5000

    David Zalman
    Martin Krolewski
    David M. Reap
    101 Park Avenue
    New York, New York 10178
    Ph. (212) 808-7800

    *Special Counsel to the Attorney*
    *General*

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP

By:___/s/Leonard Z. Kaufmann_____
    Leonard Z. Kaufmann
    Christina N. Stripp
    Park 80 West – Plaza One
    250 Pehle Avenue, Suite 401
    Saddle Brook, New Jersey 07663
    Ph. (201) 845-9600

    *Special Counsel to the Attorney*
    *General*


LAW OFFICES OF JOHN K. DEMA P.C.

By:___/s/John K. Dema_____
    John K. Dema
    Scott E. Kauff
    John T. Dema
    1236 Strand Street, Suite 103
    Christiansted, St. Croix
    U.S. Virgin Islands 00820-5034
    Ph. (340) 773-6142

    *Special Counsel to the Attorney*
    *General*

McCARTER & ENGLISH

By: /s/Lanny S. Kurzweil
      Lanny S. Kurzweil
      John  McAleese
      Ryan Richman
      100 Mulberry Street
      Four Gateway Center
      Newark, NJ 07102
      Telephone No. (973) 848-5357
      lkurzweil@mccarter.com
      jmcaleese@mccarter.com
      rrichman@mccarter.com

*Attorneys for Defendants E. I. du Pont de Nemours and Company (as to all claims except (i) the fraudulent transfer claims; and (ii) the ISRA claim); The Chemours Company, and The Chemours Company FC, LLC (as to all claims except the fraudulent transfer claims)*

BARTLIT BECK LLP

By: /s/Katherine L.I. Hacker
      Katherine L.I. Hacker
      1801 Wewatta Street, Suite 1200
      Denver, CO  80202
      Tel:  (303) 592-3100
      Fax:  (303) 592-3140
      kat.hacker@bartlitbeck.com

*Attorneys for Defendant E. I. du Pont de Nemours and Company (as to the fraudulent transfer claims)*

MAYER BROWN LLP

By: /s/Andrew J. Calica
      Andrew J. Calica
      Jordan D. Sagalowsky
      1221 Avenue of the Americas
      New York, NY 10020
      Telephone No. (212) 506-2500
      acalica@mayerbrown.com
      jsagalowsky@mayerbrown.com

By: /s/Donald J. Camerson
      Donald J. Camerson, II
      James Crowder
      BRESSLER, AMERY & ROSS, PC
      325 Columbia Turnpike
      Florham Park, NJ 07932
      (973) 514-1200
      djcamerson@bressler.com
      jcrowder@bressler.com

*Attorneys for Defendant  3M Company*

NORRIS MCLAUGHLIN, P.A.

By: /s/Martha N. Donovan
      Martha N. Donovan, Esq.
      400 Crossing Blvd.
      8th Floor, P.O. Box 5933
      Bridgewater, NJ 08807
      908-252-4228
      mdonovan@norris-law.com

*Attorneys for Defendant The Chemours Company, and The Chemours Company FC, LLC (as to the fraudulent transfer claims)*

BALLARD SPAHR LLP

By:   /s/David A. Haworth
        David A. Haworth
        210 Lake Drive East, Suite 200
        Cherry Hill, NJ 08002
        Tel: (856) 761-3400
        Facsimile: (856) 761-1020
        haworthd@ballardspahr.com

        *Attorneys for Defendant E. I. du Pont de Nemours and Company (as to Third Count only, ISRA claim)*


IT IS SO ORDERED.

Dated: 3|17|2021

James B. Clark, U.S.M.J.

23