**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, et al.

    *Plaintiffs*,

v.

E.I. DU PONT DE NEMOURS AND
COMPANY, et al.

    *Defendants*.

Civil Action Nos.
19-14758,
19-14765,
19-14766,
19-14767.

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter involves four cases which have been consolidated before the Court for pretrial proceedings. Currently pending is a partial motion to dismiss or to strike certain portions of Plaintiffs' Second Amended Complaints (the "SACs") filed in the four cases arising out of these parties' disputes over the Defendants' alleged environmental contamination of four sites in New Jersey. Movants are Defendants E.I. du Pont de Nemours and Company ("Old DuPont"); The Chemours Company ("Chemours"); The Chemours Company FC, LLC; DuPont Specialty Products USA, LLC ("DuPont Specialty Products"); Corteva, Inc. ("Corteva"); and DuPont de Nemours, Inc. ("New DuPont") (collectively "Defendants"). The Court reviewed all submissions

in support and in opposition,[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).  For the reasons that follow, Defendants' motion is **GRANTED** in part and **DENIED** in part, and Plaintiffs' motion to file a sur-reply, D.E. 177, is **DENIED**.

## I.     FACTS AND PROCEDURAL HISTORY

The consolidated cases arise out of Old DuPont's alleged contamination of four different sites in New Jersey, which Plaintiffs refer to as (1) the Chambers Works Site[2]; (2) the Parlin Site[3]; (3) the Pompton Lakes Works Site[4]; and (4) the Repauno Site.[5]  In general, Plaintiffs allege that Old DuPont "discharge[d] … hazardous substances and pollutants at and from" those sites "for almost a century" or longer[6] in violation of certain New Jersey statutes and the common law, D.E. 61[7] ("SAC") ¶¶ 1-2, while knowing for at least for several decades that those substances do not naturally degrade and are dangerous, Civ. No. 19-14766, D.E. 57 ("CWSAC") ¶ 4.  More specifically, Plaintiffs indicate that Old DuPont released per- and polyfluoroalkyl substances ("PFAS") and perfluorooctanoic acid ("PFOA") into the environment for decades, *see* SAC ¶¶ 8-

---

[1] Defendants' brief in support of the instant motion, D.E. 89-1 will be referred to as "D. Br."; Plaintiffs' brief in opposition, D.E. 108, will be referred to as "Opp'n"; Defendants' reply to Plaintiffs' opposition, D.E. 118, will be referred to as "D. Reply".

[2] Civ. No. 19-14766.

[3] Civ. No. 19-14767.

[4] Civ. No. 19-14758.

[5] Civ. No. 19-14765.

[6] "Old DuPont operated the Repauno site for more than 135 years.  Civ. No. 19-14765, D.E. 58 ("Repauno SAC") ¶ 2.

[7] Unless otherwise indicated, the docket entry numbers in this Opinion refer to Civil Action No. 19-14758.

9, 17, despite knowing for about fifty years "that[] PFOA, PFNA[8] and other PFAS compounds are extremely resistant to degradation, they persist indefinitely in the environment, they bioaccumulate in blood, and they pose a substantial threat to human health and the environment[,]" CWSAC ¶ 4. According to Plaintiffs, since the 1980s, the State of New Jersey has attempted to have Old Dupont and, more recently Chemours, "delineate the extent of contamination and remediate the contamination" at those sites, without satisfactory success. SAC ¶ 107. Plaintiffs allege that while Defendants have addressed some contamination, "extensive contamination remains" and continues to cause harm. *Id.* ¶ 120.

In 2005, several parties, including Old DuPont, the New Jersey Department of Environmental Protection ("DEP"), and the Administrator of the New Jersey Spill Compensation Fund "entered into a Compensatory Restoration Administrative Consent Order ('CRACO')." *Id.* ¶ 116; D.E. 89-2 ("CRACO") at 1.[9] Paragraph 32 of the CRACO provided as follows:

> For and in consideration of the payments set forth in paragraph 8 of this [CRACO], and the performance by DuPont of the compensatory restoration projects described in paragraphs 9 through 27 of this [CRACO], the Department agrees to issue a Release/Covenant Not to Sue to DuPont that hereby fully and forever releases, covenants not to sue, or otherwise take administrative action against the Releasees for any and all of the State's claims and causes of action for Natural Resource Damages[.]

CRACO ¶ 32. Paragraph 6 defined "Natural Resource Damages" to

> include any and all claims for lost use of; injury to, or destruction of, ground water, or for the restoration to compensate the citizens of New Jersey for the injury to ground water, arising from discharges of hazardous substances that occurred at the Properties prior to the

---

[8] "PFNA" is short for "perfluorononanoic acid."

[9] It appears that the parties have executed several agreements and consent orders. *See, e.g.*, SAC ¶¶ 113, 117; CWSAC ¶¶ 90-116. However, Defendants assert, and Plaintiffs do not appear to dispute, that the CRACO applies to "each of the four Sites." D. Br. at 6; *see also id.* at 12 n.8.

3

>Effective Date of this Compensatory Restoration Administrative Consent Order.

*Id.* ¶ 6.

Paragraph 8 required Old "DuPont to pay the Department the sum of $500,000.00 in partial settlement of the [DEP]'s claims for Natural Resource Damages for injuries to ground water[]" "[w]ithin 90 days after" the CRACO's effective date in June 2005. *Id.* ¶¶ 8, 43. Paragraphs 9-27 required Old DuPont to take other action, including placing conservation easements on each relevant parcel with two exceptions, recording the easements in the relevant counties, and submitting copies of the easements to the DEP. *Id.* ¶ 10. Old DuPont was also obligated to provide the DEP with a plan to demolish "all abandoned/derelict structures" on two of the "Pompton Lake Parcels," and to remove debris. *Id.* ¶¶ 11(i)-(ii). Old DuPont was to execute the plan within 60 days of the DEP's approval of the plan (or longer if authorized by the DEP) and then report back to the DEP. *Id.* ¶¶ 13-15. Once the report had been approved and executed, Old DuPont was to convey those parcels to the DEP within 60 days. *Id.* ¶ 16.

Paragraph 34 reserved the DEP's "right to pursue DuPont for natural resource damages" in any of the following circumstances: (1) "injuries to any natural resource, other than ground water, resulting from a discharge at any of the Properties that occurred prior to" the CRACO, *id.* ¶ 34(i); (2) "injuries to any natural resource, including ground water, resulting from a discharge at any of the Properties that occurs after the" the CRACO, *id.* ¶ 34(ii); (3) "injuries to any natural resource, including ground water, resulting from the implementation of any remedial action implemented" at any of the properties, *id.* ¶ 34(iii); and (4) "injuries to ground water pursuant to paragraph 7[.]"[10]  *Id.* ¶ 34(iv).

---

[10] Paragraph 7 provided as follows:

4

The CRACO indicated that it was enforceable in New Jersey Superior Court and that New Jersey law applied. *Id.* ¶¶ 37, 40. The CRACO was also "binding, on DuPont, its successors, assignees, and any trustee in bankruptcy or receiver appointed pursuant to a proceeding in law or equity." *Id.* ¶ 42. The CRACO expressly indicated that a change in ownership or corporate status would not alter any party's responsibilities under the order. *Id.*

### B. Procedural History

Plaintiffs filed their Complaint in New Jersey Superior Court, D.E. 1-1, which Defendants removed to this Court, D.E. 1. Plaintiffs filed their Second Amended Complaint on August 31, 2020. SAC. Plaintiffs assert CRACO is not a bar to their claims for numerous reasons. *Id.* ¶ 116. After the parties agreed to consolidate the matters for pretrial purposes, *e.g.*, D.E. 31; D.E. 32, Defendants filed the instant motion, D.E. 89. On December 7, 2021, Plaintiffs filed a motion for leave to file a sur-reply, D.E. 177, to further address Defendants' arguments as to CRACO. Plaintiffs also attached several exhibits, including email correspondence between individuals who negotiated the CRACO. *See* D.E. 177-1 ¶¶ 5-6. Defendants filed opposition on December 20, 2021, to the motion for leave to file a sur-reply. D.E. 193.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a Rule 12(b)(6)

---

> DuPont agrees that the settlement values for the Sites reflected in this agreement are premised on current and future compliance with all lawfully imposed requirements for remedial or primary restoration measures at the covered sites. Failure to comply with such measures may give rise to additional natural resource damage liability, to the extent that the noncompliance increases the scope or duration of natural resource injury.

CRACO ¶ 7.

motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). A court "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. A court, however, does not credit labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). But even if plausibly pled, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

In deciding a motion to dismiss, a court ordinarily considers only the complaint's well-pled factual allegations, exhibits attached to the complaint, and matters of public record. A court may also rely on "a document *integral to or explicitly relied* upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (citation omitted). A document is integral if a "claim would not exist but-for the existence of the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and

6

not merely whether the extrinsic document was explicitly cited." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  If a court considers material beyond the bounds delineated by the Third Circuit, then the court must, upon proper notice, convert a motion to dismiss to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999); *see also* Fed. R. Civ. P. 12(d).

Finally, "a complaint need not anticipate or overcome affirmative defenses[.]" *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).  As a result, "courts rarely consider affirmative defenses on motions to dismiss[, but courts] may dismiss a complaint when an unanswered affirmative defense appears on its face.  That includes documents attached to the complaint and matters of public record."  *Clean Air Council v. U.S. Steel Corp.*, 4 F.4th 204, 211 (3d Cir. 2021) (internal quotation marks and citation omitted); *see also McGarry v. GMRI, Inc.*, 2:16-CV-00606-CRE, 2017 WL 118406, at *3 (W.D. Pa. Jan. 12, 2017) ("Release is an affirmative defense. Fed. R. Civ. P. 8(c).  While affirmative defenses are usually only permitted to be raised in an answer, the Third Circuit allows an affirmative defense to be raised in a motion to dismiss if it is apparent on the face of the complaint and no development of the record is necessary.").

### III. ANALYSIS

Defendants' motion raises several arguments, which the Court considers in turn.

#### A. THE CRACO

Defendants' primary argument is that the CRACO[11] bars Plaintiffs' claims for natural resource damages done to groundwater.  D. Br. at 12.  Defendants assert that Plaintiffs have pled

---

[11] As noted, the CRACO expressly indicates that New Jersey law applies, and the parties do not contest the provision's validity.

7

no facts showing that Defendants have breached the CRACO and have never sought to rescind it. *Id.* at 14, 18. Plaintiffs counter that the matter cannot be dismissed pursuant to Defendants' interpretation of the CRACO because it would require the Court to resolve extrinsic questions of fact and to rely on documents well beyond the SACs. Opp'n at 1-2. Plaintiffs further argue that Old DuPont did not satisfy its obligations under the CRACO, because, among other things, it failed to record the conservation easements as required by paragraph 10 of the CRACO. *Id.* at 3.

The Court agrees with Plaintiffs. Because the CRACO required future acts when it was executed, more factual development is needed to determine whether Defendants have satisfied the CRACO. To receive the protections potentially offered by the CRACO, Defendants need to establish that they performed all of the obligations imposed on them by consent order. As noted, those obligations include paying certain amounts, CRACO ¶ 8; placing conservation easements on the relevant parcels, *id.* ¶ 10; demolishing certain structures, *id.* ¶¶ 11-16; and conveying those properties to the DEP, *id.* Determining whether Defendants abided by those conditions would, at a minimum, require the Court to consider documents and information beyond those permissible at this stage. Again, although "it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint," *Schmidt*, 770 F.3d at 250, Plaintiffs are not required "to plead around an affirmative defense[,]" *id.* at 252.

Accordingly, the Court denies Defendants' partial motion to dismiss those claims arguably subject to the CRACO. As a result, the Court also denies Plaintiffs' request to file their sur-reply because it is only relevant to the CRACO arguments.

### B. COMMON LAW TRESPASS

Defendants raise two arguments as to why Plaintiffs' common law trespass claims should be dismissed. First, Defendants assert that a plaintiff must be in "exclusive possession of the

property in question." D. Br. at 25.[12] It follows that because Plaintiffs are proceeding as public trustees, they do not enjoy exclusive possession of those resources. *Id.* at 26.

The State agrees that it cannot "pursue its trespass claim with respect to lands that it own[s] purely as a public trustee[,]" but distinguishes its role of public trustee from that of *parens patriae*. Opp'n at 33. The State contends that it should be allowed to pursue its claim as the *parens patriae*. *Id.* at 34. Alternatively, Plaintiffs assert that the State is the owner of the State's groundwater. *Id.* at 34. Plaintiffs further assert that N.J. Stat. Ann. § 12:5-2 grants the DEP the power to bring actions to prevent trespasses onto New Jersey's navigable waters or riparian lands and that N.J. Stat. Ann. § 12:3-8 grants the DEP the authority to bring actions for trespass upon the State's lands that are submerged or become submerged. *Id.* at 37-38.

The parties agree that "New Jersey law clearly requires exclusive possession as an element of trespass." *In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, MDL No. 1358 (SAS), 2014 WL 840955, at *3 (S.D.N.Y. March 3, 2014) (footnote omitted); *see also id.* at *3 n.51 (collecting cases). The New Jersey Supreme Court has not yet ruled on the issue of whether the State can nevertheless proceed under a *parens patriae* theory if the State does not enjoy exclusive possession, or, alternately, as the owner of the State's groundwater. When predicting how a state's highest court will rule on an issue, a court may look to the decisions of that state's intermediate appellate courts for persuasive authority. *Mosely v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996). In *New Jersey Department of Environmental Protection v. Hess Corporation*, A-2893-

---

[12] Both parties rely on New Jersey law. Seeing no clear reason to deviate from the parties' assumption that such an analysis would result in the application of New Jersey law, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys "R" Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the . . . claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (*citing USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

18T2, 2020 WL 1683180 (N.J. Super. Ct. App. Div. Apr. 7, 2020), the plaintiffs, which included the DEP, brought environmental claims against the defendants, including a claim for common law trespass. *Id.* at *1. The trial court dismissed the trespass claim. *Id.* at *2. On appeal, the plaintiffs argued "that their trespass claim should be restored because the State owns the water resources for the State." *Id.* The Appellate Division disagreed, reasoning as follows:

> Land in the public trust is held by the State on behalf of a second party, the people. Such land cannot be in "exclusive possession" of the State as the interest created by the doctrine is intended to ensure that others have use of the same land. It does not grant to the State the exclusive possession of property.

*Id.* at *5-6 (internal footnote and citation omitted). The plaintiffs also invoked the doctrine of *parens patriae*, but the Appellate Division did not consider that argument because it had not been raised below. *Id.* at *5 n.3.

The Court finds the *Hess* decision persuasive and adopts its ruling here. Plaintiffs, however, argue that "public trustee" and "*parens partriae*" are distinct theories. Opp'n at 33. Nevertheless, the Appellate Division has observed in *dicta* that there are no meaningful differences between the two doctrines. *See State, Dep't of Evnt'l Prot. v. Jersey Ctr. Power & Light Co.*, 336 A.3d 750, 759 (N.J. Super. Ct. App. Div. 1975) ("We agree with the trial judge's conclusion and with his rejection of the artificial differences between the State's role as public trustee and its role under the fiction of *parens patriae*."), *rev'd on other grounds*, 351 A.2d 337 (N.J. 1976). *See also New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1243 n.30 (10th Cir. 2006) ("We have found no judicial authority, however, which suggests the doctrine of *parens patriae* provides a state substantive rights beyond those provided by the public trust doctrine in a case involving the contamination of a publicly-held natural resource.") (internal citations omitted). As a result, the

Court does not believe that the *Hess* court would not have reached a different conclusion had it ruled on the *parens patriae* argument.

The leading New Jersey case that Plaintiffs cite in support is *New Jersey Department of Environmental Protection v. Deull Fuel Co.*, No. ATL-L-1839-18 (N.J. Super. Ct. Law Div., Aug. 8, 2019), D.E. 108-1 at 36. In that case, a New Jersey trial court denied a motion to dismiss the plaintiffs' common law trespass claims. *Id.* at 37. The court found "that the Public Trust Doctrine trumps the exclusivity element of a trespass claim[.]" *Id.* at 42. The court relied primarily on public policy considerations, finding that the cases emphasizing the importance the exclusivity requirement were not persuasive. *Id.* at 42-44, 45. The *Deull* court disagreed with the trial court's decision in *Hess* and instead relied on *Rhode Island v. Atlantic Richfield Company*, 357 F. Supp. 3d 129 (D.R.I. 2018). *Id.* at 45-47. Yet, at the time of the decision in *Deull,* the appeal in *Hess* was pending. And, as noted, the Appellate Division in *Hess* reached the opposite conclusion as the trial court in *Deull*. Accordingly, the Court is not persuaded by the reasoning in *Deull*.

In addition, *parens patriae* is often invoked to confer standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 594 (1982); *see also United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997) ("At bottom, *parens patriae* is a standing doctrine under which a state may under proper circumstances sue on behalf of its citizens when a separate quasi-sovereign interest also is at stake."). But whether a party has standing and whether a party has stated a claim are two distinct inquiries. *See Gen. Elec.*, 467 F.3d at 1243 n.30 ("The doctrine of *parens patriae* is a standing concept rather than one of substantive recovery.… The doctrine does not create any cause of action. Rather, the doctrine *may* provide a state with standing to sue for damages to a broader range of natural resources because it does not require state ownership of such resources.") (emphasis in original) (internal citations omitted). For example, the district court in *Maryland v.*

11

*Exxon Mobil Corporation*, found that the State of Maryland had properly brought "suit for contamination of its waters[]" as *parens patriae* but had not stated a claim for common law trespass because it failed to show exclusive possession.  406 F. Supp. 3d 420, 469-471 (D. Md. 2019).

Plaintiffs also invoke N.J. Stat. Ann. §§ 12:5-2 and 12:3-8.  Defendants argue that the statutes are inapposite.  D. Reply at 21.  The Court agrees with Plaintiffs' interpretation of those statutes, which is consistent with how the New Jersey Supreme Court has read them.  *See LeCompte v. State*, 323 A.2d 481, 483 (N.J. 1974).  Accordingly, the Court holds that Plaintiffs may bring trespass actions to the extent that their focus is "the lands of the State under water, or which were heretofore under water," N.J. Stat. Ann. § 12:3-8, or "the water front of any of the navigable waters of this State or bounding thereon, or …the riparian lands of this State," N.J. Stat. Ann. § 12:5-2.

For the foregoing reasons, the Court finds that Plaintiffs cannot proceed with their common law trespass claim except as to the waters and lands covered N.J. Stat. Ann. §§ 12:5-2 and 12:3-8.

Defendants next argue the SACs are deficient because Plaintiffs "fail to specify whether the form of ownership of these lands is something other than that of a mere trustee[,]" "fail to specify which State entity or entities actually hold title to the land(s)[,]" and offer only "conclusory" allegations "regarding the presence of contamination at these properties."  D. Reply at 22.  Plaintiffs counter that their SACs sufficiently allege ownership of several parcels of land.  Opp'n at 39, 40 (citing *Exxon Mobil*, 406 F. Supp. 3d at 471; *Atlantic Richfield*, 357 F. Supp. 3d at 136).

The Court agrees with the reasoning expressed in *Exxon Mobil* and *Atlantic Richfield* on this issue.  The minute details of precisely what contaminants polluted which site are beyond that required by Rule 8(a).  *Exxon Mobil*, 406 F. Supp. 3d at 471; *Atlantic Richfield*, 357 F. Supp. 3d

at 136.  To the extent Defendants are arguing that detail is required, the Court disagrees.  The Court likewise finds that Plaintiffs sufficiently allege that they own several locations.

The Court therefore denies Defendants' motion on this ground.

### C. REMEDIES FOR PUBLIC NUISANCE

Finally, Defendants argue that the Court should strike those portions of the SACs that seek damages for Plaintiffs' public nuisance claims.  D. Br. at 38.  Defendants distinguish public and private plaintiffs, asserting that to the extent Plaintiffs proceed as private landowners, they can recover money damages only if they have "suffered a special injury."  *Id.*  And, Defendants continue, to the extent that Plaintiffs proceed as public entities, their only remedy is abatement of the nuisance.  *Id.* at 38-39.  Plaintiffs concede that their remedy as public-entity plaintiffs is generally limited to abatement but argue that they may recover the costs of abating the nuisance.  Opp'n at 42.  The Court agrees with Plaintiffs.  New Jersey law provides that a public entity may only seek abatement but may recover the costs of abatement from "the one in control of the nuisance."  *In re Lead Paint Litig.*, 924 A.2d 484, 499 (N.J. 2007).

The parties dispute the scope of an abatement and the associated costs.  *Compare* D. Br. at 40-41, *and* D. Reply at 23-25, *with* Opp'n at 44-46.  Such an inquiry into the scope of an abatement and its costs is inappropriate at this stage in the litigation.

For the foregoing reasons, Plaintiffs' remedies for their public nuisance claims are limited to abatement and the costs of such abatement.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion, D.E. 89, is granted in part and denied in part, and Plaintiffs' motion to file a sur-reply is denied. An appropriate Order accompanies this Opinion.

Dated: 12/21/21

_____
John Michael Vazquez, U.S.D.J.